278 So.2d 537 (1973)
Joseph M. STABLIER et ux.
v.
Edward G. PARTIN et al.
No. 9345.
Court of Appeal of Louisiana, First Circuit.
May 14, 1973.
Rehearing Denied June 20, 1973.
Writ Refused August 29, 1973.
*539 O. Romaine Russell and James L. Dendy, Baton Rouge, for appellants.
Gary L. Keyser, Dozier & Thompson, Baton Rouge, for appellees.
Before LANDRY, TUCKER and PICKETT, JJ.
LANDRY, Judge.
Plaintiffs, Joseph M. Stablier and Dorothy M. Stablier, brought this action to recover damages for personal injuries sustained when an automobile in which Mrs. Stablier was riding was struck from the rear by a vehicle being operated by defendant, Edward G. Partin, Secretary-Business Agent, General Truck Drivers, Chauffeurs, Warehousemen and Helpers of America, Local Union No. 5 (Teamsters). Both Partin and Teamsters were made defendants herein. From a judgment awarding Mr. Stablier special damages in the sum of $2,450.56, and Mrs. Stablier damages in the amount of $20,000.00 for personal injuries, defendants have appealed. We affirm.
Appellants maintain the lower court erred in: (1) refusing to grant defendants a requested continuance; (2) awarding damages in excess of an alleged compromise agreement settling the action for the sum of $5,000.00; (3) finding that Mrs. Stablier established her claim for personal injuries with that degree of certainty required by law, and (4) awarding Mrs. Stablier excessive damages.

THE TRIAL COURT'S REFUSAL TO GRANT A CONTINUANCE
The accident occurred January 31, 1967, at approximately 6:00 P.M. This action was instituted January 30, 1968. Issue was joined March 25, 1968. At a pre-trial conference held March 18, 1969, trial was set for June 26, 1969. A motion for continuance was filed by defendants on June 24, 1969, asserting that defendant Partin was ill and unable to appear for trial, to which motion was attached a supporting medical certificate. On March 16, 1970, the trial was rescheduled for May 8, 1970. A second motion for continuance was filed May 5, 1970, again alleging Partin's illness as well as his having a criminal indictment then pending against him. Said motion was denied the day it was filed. Simultaneously the lower court denied the motion of Partin's then counsel of record to withdraw from the case. On May 8, 1970, the following appears in the minutes of the trial court: "Considering the stipulations entered into by and between counsel for plaintiffs, Edward G. Partin in proper person, and counsel for the defendants, General Truck Drivers, Chauffeurs, Warehousemen and Helpers of America, Local Union No. 5, judgment was rendered herein in favor of plaintiff Joseph M. Stablier and Dorothy M. Stablier and against defendants General Truck Drivers, Chauffeurs, Warehousemen and Helpers of America, Local Union No. 5, for the sum of $5,000.00." Dismissal of the suit was ordered as to Partin Individually, costs to be borne by plaintiffs and Teamsters. The stipulation mentioned was an agreement whereby Teamsters agreed to pay plaintiffs the sum of $5,000.00 over a period of eighteen months, in full and final settlement of plaintiffs' claims.
Notwithstanding the above, on February 14, 1972, plaintiffs moved for summary *540 judgment alleging Teamsters had defaulted on the agreement despite passage of the term specified therein. The motion for summary judgment was set for March 13, 1972. By letter dated March 9, 1972, and filed of record March 10, 1972, defendants' new counsel requested a continuance on the ground he required extra time to familiarize himself with the case. Said letter bears the notation: "Found in the Judges Office 6/1/72not signed." By joint motion filed March 13, 1972, the case was passed and reassigned for trial on March 27, 1972, but was again passed and assigned for trial on April 3, 1972. On March 28, 1972, Teamster's President, Hugh R. Marionneaux, attacking the proposed settlement as null and void on the ground it was not signed by Marionneaux as President and Partin as Secretary of Teamsters, as required by the Union's constitution and by-laws, opposed plaintiffs' motion for summary judgment.
Plaintiffs' motion for summary judgment was denied April 3, 1972. On that same date, new counsel for Teamsters was entered of record by Oral Motion, and the case assigned for trial on April 24, 1972. On April 12, 1972, defendants' then counsel was permitted to withdraw, following which new counsel was permitted to enroll on April 22, 1972. By joint motion entered April 24, 1972, the case was reassigned for trial June 27, 1972. A new pre-trial conference was scheduled and held June 12, 1972, resulting in an order which recognized the possibility of a compromise. On June 21, 1972, a continuance was granted on joint motion of all parties and the matter set for trial October 17, 1972.
Upon commencement of trial on October 17, 1972, counsel for Appellants requested a continuance on the following grounds: "At this time, Your Honor, I am compelled to move for a continuance based on the fact that I have been unable to locate the defendant. His testimony is absolutely essential to the trial of this matter, to the defense of this matter. I made such an effort and I move the Court for a continuance at this time even being aware that it has been continued on numerous occasions." The trial court denied the request noting the time the suit had been pending, the fact that numerous continuances had previously been granted, and that defendant Partin had on several occasions changed attorneys shortly preceding trial. The trial court also noted that plaintiffs were entitled to have their day in court.
The grounds for granting a continuance are set forth in LSA-C.C.P. arts. 1601 and 1602, as follows:
"Art. 1601. Discretionary grounds
A continuance may be granted in any case if there is good ground therefor.
Art. 1602. Peremptory grounds
A continuance shall be granted in the following cases:
(1) If the attorney of record in the case is a member of the legislature and his absence is caused by his attendance at a legislative session; or
(2) If at the time a case is to be tried, the party applying for the continuance shows that he has been unable, with the exercise of due diligence, to obtain evidence material to his case; or that a material witness has absented himself without the contrivance of the party applying for the continuance."
Appellants urge their request for continuance predicated upon the discretion vested in the trial court pursuant to Article 1601, above. Relying upon Chedotal v. Richard, La.App., 183 So.2d 665, Appellants maintain it was most harmful to their cause to require trial without the benefit of Partin's testimony, since his evidence was vital to defendants' cause. We note that Chedotal, above, dealt with one of the peremptory grounds established by Article 1602, above.
As regards the granting of continuances on purely discretionary grounds, much latitude is vested in the trial court. Appellate courts will not interfere with the *541 exercise of such discretion except in cases of abuse thereof. In determining alleged abuse of discretion in such cases, each instance must be determined in the light of its own peculiar facts and circumstances. Powell v. Giddens, La.App., 271 So.2d 596.
In an affidavit dated October 23, 1972 (tendered in support of defendants' motion for new trial which was denied), defendant Partin deposed substantially as follows: During July, 1972, he was informed by his then counsel, O. Romaine Russell, that the matter had been compromised for the sum of $5,000.00 to be paid by the Teamsters, and that the proposal to settle would be submitted to the Teamster's meeting scheduled for September 25, 1972. The matter was in fact approved by Teamsters. In August, Russell became ill, and did not return to his office until approximately one week before trial date. Partin was unable to reach Russell and inform Russell of the acceptance until approximately two hours after the trial was over. For approximately three weeks prior to trial, Partin was in Houston, Texas, preparing for a trial scheduled there for October 9, 1972. That some time after adoption of the Teamster resolution of approval on September 25, 1972, Partin contacted Guy Modica of Russell's office and advised Modica that the Stablier resolution had been approved by Teamsters.
Under the circumstances, we find no abuse by the trial court of its discretion in disallowing the requested continuance. The record discloses the granting of numerous prior continuances including some required by Appellants' last minute change of counsel. It also appears there was in fact some contact between Partin and his attorney during the four month interval of June 21, 1972, and October 17, 1972. The motion for continuance under consideration was not requested because of a conflict of trial dates involving Partin. It was sought because counsel allegedly could not contact Partin, or in other words, was unaware of and could not ascertain Partin's whereabouts to inform him of the trial. Partin's affidavit discloses his awareness of the trial date. It also discloses his ability to contact his counsel within two hours of trial notwithstanding his inability to do so for two or three months prior thereto. We find it difficult to accept that Partin's attorney in this matter was unaware of Partin's presence in another jurisdiction due to a pending criminal proceeding. Significantly, counsel did not explain to the court the measures taken to locate his client without success during the four month interval between the trial date and the time the matter was last set for trial. Moreover, Teamsters, itself a defendant, can be presumed to have had knowledge of the whereabouts of Partin, its Secretary-Business Agent, during the interval in question.

ON THE MERITS
The testimony of plaintiffs is to the effect that defendant Partin rear-ended their vehicle while it was stopped for a traffic light. The nature and occurrence of the accident was confirmed by Officer Earl E. Reeves, City Police, who investigated the accident.
Partin's alleged agency is not seriously disputed. Plaintiffs and Officer Reeves testified that while at the scene, Partin repeatedly stated that when the accident occurred, he was on his way to open the Teamster Hall for wrestling matches scheduled for that evening. He also stated that he was the only one who could open the hall, and that it was imperative that he leave as soon as possible to accomplish his mission.
Appellants' chief complaint on the merits is that Mrs. Stablier did not establish causal connection between the accident and her alleged injuries, namely, a herniated disc.
It is elementary that plaintiff bears the burden of establishing each and every element of his cause to a legal certainty by a clear preponderance of evidence. This *542 simply means that, taking the evidence as a whole, the evidence adduced shows that the facts or causation alleged are more probable than not. Jordan v. Travelers Insurance Company, 257 La. 995, 245 So.2d 151.
Mrs. Stablier testified that immediately following the accident, she felt pain in her neck and back. Prior to the accident, she had experienced no such difficulty. She had never been involved in any previous accident. On returning home that night, she attempted to treat herself. Feeling no better the next day, she consulted Dr. Walker, who saw her on February 2, 1967. After several months treatment by Dr. Walker, she did not improve and was advised to consult a neurosurgeon or orthopedic surgeon. She then consulted Dr. Thomas Campanella, Orthopedic Surgeon. She later consulted Dr. Duane Forman, who had successfully operated on her husband. Dr. Forman scheduled her for surgery three times, the last scheduled operation being canceled due to Dr. Forman's having a heart attack. Ultimately, she consulted Dr. William L. Fisher, Neurosurgeon, who performed an operation upon her on February 19, 1970. Mrs. Stablier testified that until her surgery, she was in constant pain. She also stated that standing for extended periods aggravated her condition, and that she could not lift heavy objects. She also related that she was of the Catholic faith, and that, because of her back, it was impossible for her to kneel during church services. She acknowledged that since surgery, she had improved somewhat, but that she still experienced some discomfort and pain from her condition.
Dr. Edward W. Walker, Jr., General Practitioner, saw plaintiff February 2, 1967. Plaintiff complained of headache and neck and back pains resulting from an accident which occurred January 31, 1967. Dr. Walker noted muscle spasm in the dorsal and lumbosacral spine with some limitation of motion in these areas. X-rays proved negative for bony pathology. The patient was treated with muscle relaxants and ultrasonic therapy. Plaintiff returned February 10, 1967, with the same complaints. Plaintiff was also seen February 14, March 3 and March 31, 1967. Dr. Walker diagnosed plaintiff's condition as cervical dorsal and lumbosacral strain with perhaps a disc. Because plaintiff failed to respond to treatment, she was advised to see either a neurosurgeon or orthopedic surgeon.
Dr. Thomas Campanella, Orthopedic Surgeon, first saw plaintiff on September 15, 1967. She complained of injuries in an accident on January 19, 1967, notwithstanding letters from plaintiff's counsel indicating an accident on January 31, 1967. Plaintiff related a history of treatment by Dr. Walker. Examination disclosed a narrowing between the L-5 and S-1 spaces. The sciatic nerve was found to be involved. Plaintiff was in considerable pain and could not use her back. The patient was hospitalized and placed in traction until September 26, 1967, when she was discharged. In addition, plaintiff was administered physiotherapy and shots of a compound known as B-12. Dr. Campanella also saw plaintiff on October 10, October 19, and November 2, 1967. Dr. Campanella was of the opinion plaintiff had a ruptured disc. Because plaintiff did not improve, she was referred to Dr. Duane Forman, Neurosurgeon.
The record establishes that Dr. Forman scheduled plaintiff for surgery on three occasions, but died before the operation could be performed.
Dr. William L. Fisher, Neurosurgeon, saw plaintiff on February 13, 1970, by referral from Dr. Duane Forman, who had previously experienced a heart attack, and who was deceased at the time of trial. Dr. Fisher found mild to moderate spasm of the paravertebral musculature with some limitation of range of motion in the low back. Tenderness over the right sciatic nerve was also observed. Straight leg raising produced positive signs in the patient at 20 on the right. Diminution of right ankle jerk was also noted. Dr. Fisher *543 was of the opinion plaintiff had a herniated lumbar disc with compression of the right S-1 nerve root. On February 18, 1970, plaintiff was hospitalized for a myleogram which was made February 19, and confirmed the diagnosis of a herniated L-5 disc with compression of the right S-1 nerve root. Plaintiff's L-5 disc was surgically excised that same date. Plaintiff appeared to make a reasonably routine recovery and was discharged from the hospital February 27, 1970. On March 19, 1970, Dr. Fisher found plaintiff free of pain, but still suffering from some muscle tightness which was considered normal under the circumstances. Plaintiff was instructed to return in two months for further examination, but did not do so. Dr. Fisher considered that plaintiff was doing well when he last saw her.
We find that plaintiff has established causal connection between the accident and her injuries as required by law. The record discloses a continuous history of treatment, commencing two days following the accident, for injuries which plaintiff informed her first treating physician, Dr. Walker, that plaintiff had received in the accident of January 31, 1967. It further appears that in telling Dr. Campanella she was injured on January 19, 1967, plaintiff confused the date of her husband's birthday (January 19) with the date of the accident. The record is barren of evidence to support Appellants' claim that plaintiff sustained the injuries in question in an accident which occurred January 19, 1967, and not in the accident herein sued upon.
In the matter of assessing quantum for personal injuries, trial courts are vested with much discretion which will not be disturbed on appeal in the absence of a showing of an abuse thereof. Lomenick v. Schoeffler, 250 La. 959, 200 So.2d 127. Each personal injury case is to be evaluated in the light of its own peculiar facts and circumstances. Lomenick, above.
During a period of three years following her injury, plaintiff suffered greatly. She was hospitalized on two occasions, the last time for a laminectomy and surgical excision of her L-5 disc. She experienced some discomfort to the date of trial in 1972. Under the circumstances, we find no abuse of the trial court's discretion in awarding the sum of $20,000.00 in damages for such injuries. We note also that in Maggio v. Nichols, La.App., 259 So.2d 658, a like amount was awarded for substantially similar injuries.

THE ALLEGED COMPROMISE
The record does not support Appellants' claim that plaintiffs' recovery should be limited to the sum of $5,000.00 because of a compromise between the litigants.
There appears of record a unilateral document dated May 8, 1970, signed on behalf of Teamsters by its President, Hugh R. Marionneaux, Vice President, James W. Brown, Trustees, Roger J. Bergeron, Emmett F. Tucker, Jr., and S. Rogers, and Recording Secretary, Alton L. Jones. A line for the signature of Teamster's Secretary-Treasurer contains no signature. The document recites that Teamsters agrees to pay the sum of $5,000.00 over a period of 18 months in full settlement of plaintiffs' claims. It also provides that any part of the agreed sum may be paid prior to the 18 month period, but none has to be paid prior to the deadline of 18 months so long as the amount is paid by the end of the 18 month period.
Notwithstanding the apparent presence of Marionneaux's signature thereon, Appellants contend said document is null and void in that it was not signed either by Marionneaux or Partin as required by Teamsters' constitution and by-laws.
A valid compromise of a pending lawsuit can only be made in writing. LSA-C.C. art. 3071.
*544 Appellants rely upon a purportedly valid resolution adopted by Teamsters on September 25, 1972, whereby Teamsters agrees to compromise this action by paying plaintiffs the sum of $5,000.00 in monthly installments of $100.00 beginning on the date the action is dismissed and continuing until the entire $5,000.00 is paid. If said resolution be deemed acceptance of an offer by plaintiffs to compromise, no such written offer appears of record. On the other hand, if said resolution be considered an offer by Teamsters to settle, no written acceptance thereof by plaintiffs is shown. So far as the record shows, the resolution relied upon represents merely the unilateral action of Teamsters. This does not suffice to prove a binding compromise of a pending lawsuit.
The judgment of the trial court is affirmed at Appellants' cost.
Affirmed.