317 So.2d 648 (1975)
Robert C. REED, Plaintiff-Appellee,
v.
AMERICAN CASUALTY COMPANY OF READING, PENNSYLVANIA, Defendant-Appellant.
No. 10357.
Court of Appeal of Louisiana, First Circuit.
June 30, 1975.
Rehearing Denied August 26, 1975.
Writ Refused October 24, 1975.
*649 Francis G. Weller, New Orleans, for defendant-appellant.
Charles Hanemann, Houma, for plaintiff-appellee.
Before SARTAIN, ELLIS and BARNETTE, JJ.
SARTAIN, Judge.
Defendant-appellant brings this appeal from judgment rendered against it and in favor of plaintiff on plaintiff's claim for benefits under a disability income insurance policy issued by defendant. Judgment was rendered in the amount of $1200.00, a sum equal to one month's benefits under the policy, plus legal interest from date of demand. Plaintiff's demand for penalties and attorneys' fees was denied.
On appeal defendant admits that plaintiff was disabled within the meaning of the policy during the month in question, but denies coverage on the basis of plaintiff's alleged material misrepresentations in his application. In the alternative, defendant raises a defense of compromise by the parties which effectively bars the present claim. We find no merit to either of these contentions and affirm the trial court's judgment for reasons stated herein.
At the outset, we note that the original plaintiff in this action was Robert C. Reed. After trial, but prior to rendition of judgment, Mr. Reed died and Vera Newlon Reed, surviving wife and executrix of the succession of decedent, was properly substituted as party plaintiff.
The record shows that Mr. Reed, a civil engineer, was a member of a professional organization known as the American Congress on Surveying and Mapping. As a member of this group he was solicited to join a group disability income plan in November of 1971. As a result of this solicitation, on December 9, 1971 Mr. Reed submitted an application to enroll in the plan. At this time Mr. Reed was pursuing all the normal activities of his profession. Within a month of application the policy was issued.
In September of 1971, some three months prior to his insurance application, Mr. Reed sought medical advice from Dr. Cinnater because he was feeling mildly depressed and his left hand was shaking. (R. 85) The only time Dr. Cinnater had seen Mr. Reed professionally prior to this time was in January of 1971 when he gave Mr. Reed a shot of gamma globulin as a precautionary measure to prevent him from contracting infectious hepatitis, a disease which his wife had at the time.
As a result of the September visit, Dr. Cinnater found Mr. Reed's liver to be mildly enlarged and thus had an SMA 12 blood test run to examine various blood chemistries. This test showed abnormal BSP and SGOT levels which indicated liver abnormality. The resulting test levels were termed by Dr. Cinnater as being of "some significance" but "wouldn't be critical or serious." The doctor testified further that he did not recall what he actually told Mr. Reed about the test results, but did recall telling Mr. Reed that he should get more exercise, and that he would have *650 to abstain or cut down from his present rate of alcohol intake, which Mr. Reed testified had been a pint to a fifth of bourbon a day for the previous fifteen years.
Mr. Reed testified that as a result of the September test, Dr. Cinnater told him to cut down his intake of alcohol or he would have serious liver trouble in the future. He stated that Dr. Cinnater did not explain the details of the test results to him, nor did the doctor lead him to believe that there was anything wrong with him at the time other than a potential for possible future liver trouble. Mr. Reed stated further that he thereafter limited himself to one or two drinks a day, a level which his doctor said would be acceptable.
It is admitted by all parties that Mr. Reed became disabled in May of 1972 when it was discovered that he had cirrhosis of the liver with ascites. It was not known at the time what type of cirrhosis he had, not its etiology. Dr. Cinnater testified that at that time the clinical state and past history indicated Laennec's or nutritional type cirrhosis, a type which is usually associated with heavy drinking. However, Dr. Head, an expert in the field of internal medicine and gastroenterology and who also treated Mr. Reed, testified that he was not sure what type of cirrhosis Mr. Reed had since no biopsy was available. He noted that it could have developed from alcohol intake, or it could have developed from viral agents, noting that there were present in Mr. Reed's blood positive Australian antigen, an antigen type associated with a high degree of certainty with viral hepatitis.
After trial a successful biopsy was conducted by Dr. Head and it was then determined that there was chronic aggressive hepatitis with cirrhosis and cholestasis (jaundice). Dr. Head stated that the liver disease was most likely due to viral cause. He stated further that it was impossible to say what role alcohol played, but that since the alcohol was stopped for at least two years prior to that time, it would be unusual to see the activity of aggressive hepatitis as a result of alcohol intake.
Defendant now alleges that Mr. Reed made material misrepresentations in his application when he failed to disclose that he had seen a doctor in September of 1971 and was subsequently tested for liver problems and told to quit drinking, and further he failed to disclose that in July of 1967 he had had a hemorrhoidectomy. The pertient portion of the application states:
2. To the best of your knowledge and belief:
a. Have you within the past 5 years had any medical or surgical advice or treatment for:
(1) High or low blood pressure, heart trouble, arthritis, hernia, cancer, tumor, goitre or thyroid condition, kidney or prostrate condition, mental or nervous condition, ulcer, tuberculosis, diabetes or any female disorder?
(2) Any injury or ailment not named above:
b. Are you now in good health and free of any physical impairment, deformity or disease?
To (1) and (2) Mr. Reed answered "no" and to b. he answered "yes".
L.R.S. 22:619 provides:
A. Except as provided in Sub-section B of this Section and R.S. 22:692, no oral or written misrepresentation or warranty made in the negotiation of an insurance contract, by the insured or in his behalf, shall be deemed material or defeat or avoid the contract or prevent it attaching, unless the misrepresentation or warranty is made with the intent to deceive.
B. In any application for life or health and accident insurance made in writing by the insured, all statements therein made by the insured shall, in the *651 absence of fraud, be deemed representations and not warranties. The falsity of any such statement shall not bar the right to recovery under the contract unless such false statement was made with actual intent to deceive or unless it materially affected either the acceptance of the risk or[1] the hazard assumed by the insurer.
(Emphasis ours)
It is well settled that when benefits are denied on the basis of material misrepresentations in an insurance application it must be shown not only that the representations were false and material, but also that they were made with actual intent to deceive. Gay v. United Benefit Life Insurance Co., 233 La. 226, 96 So.2d 497 (1957); Knight v. Jefferson Standard Life Insurance Co., 205 So.2d 485 (1 La.App., 1967); Hendricks v. Connecticut General Life Insurance Co., 244 So.2d 249 (3 La.App., 1971); Bamburg v. Reserve Life Insurance Co., 259 So.2d 408 (2 La.App. 1972); Parfait v. Minnesota Mutual Life Insurance Co., 311 So.2d 558 (4 La.App., 1975).
The burden of proving materiality of the misrepresentations and actual intent to deceive on the part of the applicant rests with the insurer. Stoma v. Prudential Insurance Co. of America., 281 So.2d 871 (3 La.App., 1973), and authorities cited therein.
Strict proof of fraud is not required to show intent to decieve, but rather, such intent is to be determined from surrounding circumstances which show that the insured knew the statements in the application were false and recognized their materiality thereto, or from the circumstances it can be reasonably assumed that he recognized the materiality. Murphy v. Continental Casualty Co., 269 So.2d 507 (1 La.App., 1972).
Assuming the representations in the present case to be material as they affected the insurer's decision to accept the risk, we find no evidence that the insured recognized them as such, nor do we find circumstances which would lead us to reasonably assume that he so recognized them. The insured's one visit to the doctor some two months prior to his application for insurance gave the insured no cause to believe he had any health impairments other than the possibility that in the future he could have serious trouble if he did not cut down his drinking. This is corroborated by the doctor's testimony that the test results, while indicating some dysfunction, did not indicate anything critical or serious at the time. The testimony of Dr. Cinnater is extremely vague as to what, if anything, he told Mr. Reed about his physical state at that time.
The testimony of Dr. Head, elicited after the liver biopsy was conducted, shows the uncertainty as to exactly what caused the liver problem and whether it was of such a nature as to have existed to an extensive degree at the time of the September visit. What problems the insured was then having could only be delineated in light of subsequent developments. It was not until the following May, nine months after the September visit and five months after his application, that a serious liver disease was definitively diagnosed.
As for the insured's failure to disclose his hemorrhoidectomy performed in 1967, he testified that he felt he had been cured and had had no problems in that respect since having the operation. His testimony convinces us on this point that he had no idea this would be of any importance to the insurance company. Even the testimony of the insurer's own expert is vague on this point. It is not clear from the record how much weight, if any, such an operation would have been given in consideration of acceptance or rejection of the risk.
*652 Accordingly, we find no evidence that the insured had any intent to deceive the insurer, and thus we find him innocent of any material misrepresentations within the meaning of R.S. 22:619(B).
We turn now to the insurer's second contention of compromise. Louisiana Civil Code Article 3071 states:
"A transaction or compromise is an agreement between two or more persons, who, for preventing or putting an end to a lawsuit, adjust their differences by mutual consent, in the manner which they agree on, and which every one of them prefers to the hope of gaining, balanced by the danger of losing.
This contract must be reduced into writing."
This article was applied by this court in Stablier v. Partin, 278 So.2d 537 (1 La. App., 1973), writ refused, 281 So.2d 748, wherein it was specifically held that a valid compromise of a pending lawsuit can only be made in writing.
In the present case, the allegations of compromise are based on the following series of occurrences. On March 13, 1973, four months after suit was filed, attorney for the insurer authored a letter sent to attorney for the insured wherein he set forth a confirmation of a purported oral agreement between the parties to settle for a designated sum. On April 2, 1973, a second letter, along with a check for the designated sum, was sent by the insurer's attorney to the insured's attorney. The check was returned by the insured's attorney to the attorney for the insurer on April 4, 1973. This was the only written evidence offered in support of a compromise.
It is obvious from these events that no agreement between the parties was ever consummated in writing as required by the above cited article. The only semblance of written terms is contained in the unilateral letters from the insurer and to which the insured never agreed in writing. Thus we find no merit to any defense based on compromise.
For the above and foregoing reasons, the decision of the trial court is affirmed with all costs of these proceedings assessed to appellant.
Affirmed.
NOTES
[1] "or" has been interpreted to mean "and". Knight v. Jefferson Standard Life Insurance Co., 205 So.2d 485 (1 La.App., 1967).