Gerald J. ST. AMAND, Plaintiff,

v.

MARRIOTT HOTEL, INC., et al., Defendants.

Civ. A. No. 75–2532.

United States District Court,
E. D. Louisiana.

March 29, 1977.

William D. Treeby, New Orleans, La., for plaintiff.

Donald O. Collins, New Orleans, La., for defendants.

Timothy G. Schafer, New Orleans, La., for intervenor.

ALVIN B. RUBIN, District Judge:

By motion for a new trial the plaintiff in this diversity tort case seeks to set aside a

---

16. These 60 days shall be computed in accordance with the rules stated in 18 U.S.C. § 3161(e), (h).

consent judgment entered as a result of a compromise reached between his lawyer and defense counsel after the jury had reached a verdict that the defendant was liable for the injuries to the plaintiff, and while the trial was still underway with respect to the quantum of damages. The plaintiff's lawyer acted in good faith and in the belief that his client had agreed to accept the amount stipulated. Because, in fact, the plaintiff had not done so, and, in addition, because counsel's authority to compromise was not in writing, the motion for a new trial on the issue of damages only is GRANTED.

The jury trial began on December 6, 1976. The issue whether or not the defendant was liable to the plaintiff had been tried and the jury had found the defendants, Marriott Hotel, Inc. and Liberty Mutual Insurance Company, liable. Thereafter, during the trial by jury on the issue of damages, settlement negotiations were conducted during various recesses in the trial. They continued after trial was recessed for the day. Negotiations continued into the evening.

The plaintiff, who was in poor health, had been in a wheelchair all day. He had been brought to court by ambulance and was waiting with his wife for the ambulance to take him home. He was physically and emotionally fatigued and in pain. He had previously stated that he would accept a settlement of $350,000.00. After various negotiations, the plaintiff's lawyer expressed willingness to accept the sum of $200,000.00. The defendant's counsel secured approval by his client to pay this sum. The plaintiff's lawyer had discussed the offer with his client and thought his client had agreed to it. In fact, a preponderance of the evidence indicates that the plaintiff had not agreed to accept it. But because both counsel thought they had reached an agreement, defendant's counsel telephoned me at my home that night and stated that the case had been settled. Later that night, the jury was instructed by telephone not to report. On the following morning and, in the absence of the plaintiff, a judgment based on the supposed agreement was

entered. Within a short time thereafter, the plaintiff notified his lawyer that the agreement did not meet his approval, retained new counsel, and moved to set the judgment aside.

■ In this diversity case, counsel's authority as his client's attorney is governed by Louisiana law. *Massachusetts Casualty Insurance Company v. Forman*, 5 Cir. 1972, 469 F.2d 259 at 261. LSA–C.C. Article 3071 states:

> A transaction or compromise is an agreement between two or more persons who, for preventing or putting an end to a lawsuit, adjust their differences by mutual consent, in the manner which they agree on, and which every one of them prefers to the hope of gaining, balanced by the danger of losing.
>
> This contract must be reduced into writing.

Article 3071 has been consistently applied in the Louisiana cases. *Charbonnet v. Ochsner*, 1971, 258 La. 507, 246 So.2d 844. See also *Stablier v. Partin*, La.App., 1973, 278 So.2d 537; *Reed v. American Cas. Co. of Reading, Pennsylvania*, La.App., 1975, 317 So.2d 648, 652; *Senegal v. Delahoussaye*, La.App., 1975, 311 So.2d 58; *Masinter v. Grunewald*, La.App., 1975, 309 So.2d 739; *Lytle v. Commercial Insurance Co. of Newark*, La.App., 1973, 285 So.2d 289; and *Lytle v. Liberty Mutual Insurance Company*, La.App., 1973, 285 So.2d 293; *Elchinger v. Elchinger*, La.App., 1965, 181 So.2d 297; *Mackey v. Scarborough*, 1954, 226 La. 106, 75 So.2d 24.

Most of these cases involve compromises reached out of court. However, in *Lytle v. Commercial Insurance Company, et al.,* supra, on the date set for trial and at the instance of the court, an oral compromise was reached among all of the attorneys and their clients. The court recessed its proceedings in order to allow the lawyers to prepare a written agreement of compromise and to secure drafts for payment to the plaintiff. Later that day, when all the documents had been prepared, the plaintiff refused to sign them. Several days later, upon motion of all the defendants, the court

dismissed the plaintiff's suit on the ground that the action had been compromised. For purposes of appeal, plaintiff's new attorney agreed to a stipulation. The stipulation provided that plaintiff's original attorney, who had negotiated the compromise, would testify if called that he had been fully authorized by the plaintiff to compromise, after a complete discussion of the details. The plaintiff offered no evidence to contradict the stipulation. The Court of Appeals held the dismissal improper because of lack of compliance with Article 3071:

> In order to enforce a contract of compromise, the agreement must be reduced to writing. An oral agreement is unenforceable in the face of Article 3071. The trial judge was powerless to dismiss the plaintiff's suits without a written contract of compromise.

285 So.2d at p. 292.

In *Morrow v. American Bank & Trust Co.*, M.D.La.1975, 397 F.Supp. 803, the court concluded that the requirements of Civil Code Article 3071 were satisfied when plaintiff's attorney, in the plaintiff's presence in open court, announced for the record that a settlement had been reached for a specific sum. But the decision does not rest merely on the oral authority to compromise a claim. The plaintiff was present in open court when the settlement was announced for the record. He did not complain. He at no time alleged, even in his suit for additional sums brought in Louisiana, that his attorney did not have his authority to make the statement of settlement that was made in open court. The issue in that case was the meaning of the settlement so reached.

If, however, this is a procedural matter, governed by the federal results, we reach the same result, not merely because the authority was not in writing but because, in fact, counsel for plaintiff lacked his client's authorization to compromise for the sum stated in the judgment.

The Tenth Circuit Court of Appeals has summarized federal jurisprudence concerning the authority of an attorney to settle a case:

> The law is settled that an attorney of record may not compromise, settle or consent to a final disposition of his client's case without express authority. . . . However, this general principle must be considered in connection with the rule that an attorney of record is presumed to have authority to compromise and settle litigation of his client, and a judgment entered upon an agreement by the attorney of record will be set aside only upon affirmative proof of the party seeking to vacate the judgment that the attorney had no right to consent to its entry.

*Thomas v. Colorado Trust Deed Funds, Inc.*, 10th Cir., 1966, 366 F.2d 136, 139. This decision rests on Supreme Court precedent, which also requires that the motion to set aside a judgment be made in due time. In *United States v. Beebe*, 1901, 180 U.S. 343, 21 S.Ct. 371, 374–5, 45 L.Ed. 563, the court wrote:

> A judgment entered upon such a compromise is subject to be set aside on the ground of lack of authority in the attorney to make the compromise upon which the judgment rests. Prima facie, the act of the attorney in making such compromise and entering . . . such judgment is valid, because it is assumed that attorney acted with special authority, but when it is proved he had none, the judgment will be vacated on that ground. Such judgment will be set aside upon application in the cause itself if made in due time or by resort to a court of equity where relief may be properly granted.

In *Theatre Time Clock Co. v. Motion Picture Advertising Corp.*, E.D.La.1971, 323 F.Supp. 172, Judge Comiskey did say,

> . . . The affidavits and argument in open court warrant a finding that the negotiations reached a point where mutual assent had been expressed orally to settle the litigation. The law requires no more formality and not greater particularity than appears here for the formation of a binding contract.

That was a civil anti-trust case, not a diversity case—a point which may not be decisive. In any event, the authority of counsel

to conclude an agreement was not an issue. The most often cited Fifth Circuit case dealing with the validity of a settlement concluded by counsel is *Cia Anon, etc. v. Harris*, 5th Cir. 1967, 374 F.2d 33. This decision is consistent with *Thomas*, supra, and *Beebe*, supra. The issue in *Cia Anon*, as in this case, was the authority of the attorney to settle. The court found, after reviewing the facts, that counsel had such authority. The lawyer had worked on the case two years and had told the other parties that he had authority to settle, only later to be contradicted by a claim that he had not had authority from an "unnamed person in Venezuela." It did stress that other counsel's reliance on the attorney's representation, combined with his long association with the case, justified upholding the judgment, particularly where the defendant was a corporation whose alleged internal policies on granting authority to settle were not made known to its own counsel.

Here, however, the plaintiff was not a foreign corporation with unknown policies. The defendant was aware throughout the negotiations that the plaintiff's lawyer lacked general authority to settle the case and that the exact settlement required his client's approval.

No busy court can be happy to try a case once apparently settled. Plaintiff's trial counsel was reputable and able. Albeit without fault, he misunderstood the situation and thought he had authority to reach a settlement for a specific sum. The court, in deference to the plaintiff's health, did not follow its custom of requiring the presence of plaintiff to stipulate to the agreement. Since, in fact, the plaintiff did not approve the settlement, nor do anything either to ratify it or to estop himself from denying his counsel's lack of authority, he is entitled to have the judgment set aside and to entrust his case to a jury.