Clarence C. BRELAND and Lilly C. Breland, Plaintiffs-Appellants,

v.

LOUISIANA–PACIFIC CORPORATION, Defendant-Appellee.

No. 82–3401

Summary Calendar.

United States Court of Appeals, Fifth Circuit.

Feb. 24, 1983.

Patrick L. Durusau, Jena, La., for plaintiffs-appellants.

Gold, Little, Simon, Weems & Bruser, Henry B. Bruser, III, Alexandria, La., for defendant-appellee.

Before RUBIN, JOHNSON and WILLIAMS, Circuit Judges.

PER CURIAM:

Appellants, Clarence C. Breland and Lilly C. Breland, who are Louisiana residents, filed this diversity action against appellee, Louisiana-Pacific Corporation, a Delaware corporation. The claim is for damages allegedly incurred because of wrongful conduct on the part of appellee in obtaining a temporary restraining order which prohibited appellants from interfering with appellee's logging operations on plaintiffs' property pursuant to a timber contract between the parties. Appellee counterclaimed for damages, alleging that appellants breached their one-year timber contract. Trial was scheduled for Monday, December 7, 1981.

At a pretrial conference held on December 4, 1981, the district court made a preliminary evidentiary ruling interpreting the timber contract in the manner contended by appellee. That afternoon and evening, counsel discussed settlement. At one point, appellants' counsel met with his client, Mr. Breland, and understood him to acquiesce in the settlement arrived at by counsel.[1] Subsequently, he informed opposing counsel of his clients' acceptance of the proposed settlement. This information was conveyed to the court prior to the time trial was scheduled to proceed on Monday;[2] the fact and terms of settlement, however, were not recorded in open court. The court thereupon entered a sixty day order of dismissal.[3]

Appellants refused to sign the settlement documents, whereupon appellee moved to enforce the settlement agreement and appellants, in turn, moved to reopen the case.

---

1. The settlement terms reached by counsel were the mutual release of appellants' claim and appellees' counterclaim for damages, and the payment by appellee of $100 to appellants towards an expert witness fee incurred during the pendency of the action. The above settlement terms were those found to be enforceable by the court below.

2. On Saturday morning, December 5, 1981, appellee's counsel telephoned the district judge's law clerk to advise the court of the fact that the case had been settled.

3. This order dismisses the action "without prejudice to the right, upon good cause shown within sixty (60) days, to reopen the action if settlement is not consummated."

While these motions were pending, appellants filed a new suit in state court claiming that only a "partial settlement" had been reached[4] and asserting the same claims which had been adversely affected, if not barred, by the district court's preliminary evidentiary ruling. The suit in state court was pending on April 6, 1982, when the U.S. District Court heard evidence on appellee's motion to enforce settlement and on appellants' motion to reopen the case. The court, in an oral ruling, granted appellee's motion to enforce the settlement and denied appellants' motion. Subsequently, appellee removed the state court suit to the federal court, and obtained favorable rulings therein on its motions to consolidate and to dismiss, based on the determination of the case in the federal court.

On appeal, appellants contend that the district court erred in: 1) finding that an enforceable settlement had been reached; 2) holding that Mrs. Breland was bound by any settlement Mr. Breland may have reached without her express consent or authorization; and 3) rejecting their position on the preliminary substantive issue concerning the effective date of the timber contract at issue in this case.

Since we agree that under controlling Louisiana law no binding settlement had been reached, we do not reach the question of whether Mrs. Breland's claim was settled along with that of her husband, as held by the court below. We also decline to address the merits of the district court's preliminary ruling, as that non-final, interlocutory determination is not properly before us at this time.

In this diversity action, the question of whether an enforceable settlement was entered into is controlled by state law.[5] The parties' agree that Louisiana law controls, and that Article 3071 of the Louisiana Civil Code governs the enforceability of the settlement at issue. La.Civ.Code Ann. art. 3071 (West 1952 & Supp.1982). They disagree, however, as to the result reached when the statute is applied to the facts of this case. We find the answer clear, that Article 3071 precludes judicial enforcement.

Article 3071, as amended, provides:

Art. 3071. Transaction or compromise, definition

A *transaction* or *compromise* is an agreement between two or more persons, who, for preventing or putting an end to a lawsuit, adjust their differences by mutual consent, in the manner which they agree on, and which every one of them prefers to the hope of gaining, balanced by the danger of losing.

*This contract must be either reduced into writing or recited in open court and capable of being transcribed from the record of the proceeding.* The agreement recited in open court confers upon each of them the right of judicially enforcing its performance, although its substance may thereafter be written in a more convenient form.

(Emphasis added). By virtue of the second paragraph of the Article, a settlement is enforceable only if reduced to writing or recited in open court. In the immediate case, neither prerequisite to enforceability is alleged. Any oral settlement which may have been reached was not reduced to writing. While counsel informed the court— shortly before trial was to proceed—that settlement had been reached, neither the fact nor the terms of that settlement were recorded in open court.

---

4. Appellants claimed that only appellee's counterclaim had been settled, and not their own claim against appellee.

5. As stated in *Lee v. Hunt*, 631 F.2d 1171, 1173–74 (5th Cir.1980), *cert. denied*, 454 U.S. 834, 102 S.Ct. 133, 70 L.Ed.2d 112 (1981): "Although federal courts possess the inherent power to enforce agreements entered into in settlement of litigation, the construction and enforcement of settlement agreements is governed by principles of state law applicable to contracts generally." *Cf. Fulgence v. J. Ray McDermott & Co.*, 662 F.2d 1207 (5th Cir.1981) (where settlement issue arises in context of a Title VII employment suit, federal courts are competent to determine whether a settlement exists without resort to state law, given the federal source of the litigants' rights and that application of state law might hamper the congressional scheme and policy involving Title VII).

Louisiana courts have strictly adhered to Article 3071's mandate, finding the statutory intent to eliminate confusion over any extrajudicial compromise, its terms and the parties' acquiescence therein.[6] The only "exception" carved out by the courts, in enforcing settlement agreements, allegedly reached, is now codified in the Article as quoted above. Prior to the July 1981 amendment, the second paragraph of the Article, in its entirety, read: "This contract must be reduced into writing." In some cases, Louisiana courts have enforced settlements which had been recorded in open court, particularly where additional evidence of client acquiescence was present.[7] Since the current version of Article 3071 does no more than codify this judicially created exception, we find that the pre-amendment interpretations of the Article are applicable to our post-amendment interpretation. Thus, upon application of these cases, it is clear that the district court erred in enforcing the settlement agreement which it determined the parties had reached.[8]

Accordingly, we vacate the district court's judgment dismissing the case and direct the court to reinstate the case for trial.

REVERSED.

**6.** *See, e.g., Bourgeois v. Franklin,* 389 So.2d 358 (La.1980); *Jasmin v. Gafney, Inc.,* 357 So.2d 539 (La.1978); *Martin v. Holzer Sheet Metal Works, Inc.,* 376 So.2d 500 (La.1979); *Salling Wiping Cloth Co. v. Sewell, Inc.,* 419 So.2d 112 (La.Ct.App.1982); *Jones v. MFA Mutual Insurance Co.,* 410 So.2d 1190 (La.Ct.App.1982); *Singleton v. Bunge Corp.,* 364 So.2d 1321 (La. Ct.App.1978). *See also St. Amand v. Marriott Hotel, Inc.,* 430 F.Supp. 488 (E.D.La.1977), *aff'd without opinion,* 611 F.2d 881 (5th Cir.1980). *But cf. Mull v. Marathon Oil Co.,* 658 F.2d 386 (5th Cir.1981) (settlement enforced where plaintiff fully admitted oral settlement but claimed he was "backed into a corner," where court issued 60-day notice of dismissal and defendant's counsel mailed a letter and a check confirming the settlement).

**7.** *See, e.g., Martin v. Holzer Sheet Metal Works, Inc., supra; Singleton v. Bunge Corp., supra. See also Morrow v. American Bank & Trust Co.,* 397 F.Supp. 803 (M.D.La.1975), *aff'd,* 547 F.2d 309 (5th Cir.1977).

**8.** The district court determined the existence and terms of the settlement agreement after finding appellants' testimony and position incredible. However accurate the trial court's observations may be, Louisiana jurisprudence renders them irrelevant to the courts' resolution of the enforceability of a purported settlement. The district court's additional reliance, in part, upon a finding that appellants admitted settlement in their state court claim is also misplaced. Appellants therein only claimed a "partial settlement"—by which terms appellee's counterclaim alone was "compromised"—which they readily admitted before the court below. They did not, however, admit to any binding settlement of their own claim which was the specific issue in dispute in the district court. Thus, neither credibility determinations nor findings of admissions could validly be considered by the court below in passing upon appellee's motion to enforce settlement.