Peter George Lockwood THOMPSON

v.

CONTINENTAL EMSCO COMPANY.

Civ. A. No. H–81–2096.

United States District Court,
S.D. Texas,
Houston Division.

March 11, 1986.

Mike Gallagher and Charles Price, Fisher, Gallagher, Perrin & Lewis, Houston, Tex., for plaintiff.

B. Rice Aston, Woods, Aston, Mays, Harman & Watt, Houston, Tex., for defendant Continental Emsco Co.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

CARL O. BUE, Jr., District Judge.

Before the Court is Plaintiff's Motion to Enforce Settlement Agreement against Defendant, Continental Emsco Company ("Continental Emsco"). The above referenced cause of action arises under this Court's diversity and maritime jurisdiction. An evidentiary hearing was held by this Court on January 17, 1986, to determine whether a binding oral settlement agreement was entered by the parties. After

reviewing the entire record, including all of the memoranda submitted by the parties, and the evidence presented, this Court determines, for the reasons stated hereinafter, that a binding oral settlement agreement was not entered by the parties, and may not be enforced by this Court.

### Findings of Fact

1. On February 7, 1977, Peter George Lockwood Thompson ("Plaintiff") sustained paraplegic injuries while using pipe tongs aboard the PENTAGONE 82, a semisubmersible oil drilling vessel located in the North Sea.

2. This action was originally filed in Texas State Court as Cause No. 79–5380 in the 133rd District Court, Harris County, Texas. Plaintiff sued his employer and operator of the vessel, Forex Neptune, S.A. ("Forex") and B.J. Hughes, Inc. ("B.J. Hughes"), and Byron Jackson, Inc. ("Jackson"), manufacturers of the pipe tongs. Defendant, Continental Emsco, designer and builder of pertinent aspects of the tong system, was added as a Defendant by Plaintiff's Second Amended Original Complaint. Petition for Removal and attachments thereto.

3. This action was removed to this Court on June 2, 1981, by third-party defendant, Forex, pursuant to 28 U.S.C. § 1441(c). Petition for Removal and Memorandum of Authorities in Support Thereof.

4. On August 26, 1982, Plaintiff entered into a Compromise Settlement Agreement with all Defendants except Continental Emsco. Pursuant to the Mary Carter agreement, Defendants Hughes, Jackson, and Forex paid $900,000 to Plaintiff in settlement of his claims against them, but reserved rights to recover certain percentages of any recovery Plaintiff obtained from Continental Emsco. The Mary Carter agreement provides as follows:

2. * * *

In the event that CONTINENTAL EMSCO COMPANY, or others, should decide to settle voluntarily the claims being asserted against them by any of the parties to this Agreement, it is agreed that FOREX NEPTUNE, S.A., B.J. HUGHES, INC. and BYRON JACKSON, INC. shall have the right to decide and must be in agreement that such settlement should be effected.

Plaintiff's Exhibit 20.

5. In his Seventh Amended Complaint, Plaintiff added a cause of action for breach of an oral settlement agreement. He pleads that on or about March 1, 1984, his counsel entered into an oral agreement with counsel for Continental Emsco to settle all claims against Continental Emsco for $1,240,000.00. Plaintiff further alleges that Continental Emsco breached the oral settlement agreement, and he seeks enforcement of said agreement. Seventh Amended Complaint.

6. Continental Emsco filed a motion to dismiss Plaintiff's cause of action for breach of an alleged oral settlement agreement for failure to state a claim upon which relief can be granted or, in the alternative, for partial summary judgment. This Court denied Continental Emsco's motion, and conducted an evidentiary hearing on January 17, 1986.

7. Settlement discussions between the parties were initiated in November, 1983, when Mr. B. Rice Aston, attorney for Continental Emsco, was authorized by Continental Emsco and its underwriters to settle this case for $1,200,000.00. During a conversation in November, Mr. Michael Gallagher, lead counsel for Plaintiff, indicated that he thought that the case could be settled for $1,200,000.00. Testimony of Price; Aston.

8. At that time, however, Plaintiff's counsel believed that a settlement could be achieved with B.J. Hughes and Jackson for $200,000.00, and that Forex would similarly settle its claims under the Mary Carter agreement for $200,000.00. Testimony of Price; Plaintiff's Exhibits 1, 4, 7, 9.

9. On November 30, 1983, Gallagher provided Aston with a written jury verdict range analysis. (Plaintiff's Exhibit 3). Thereafter, Defendant's counsel prepared two proposed written settlement agree-

ments providing for structured benefits, but agreement was never reached regarding a structured payment. Testimony of Price; Aston; Plaintiff's Exhibits 5, 11.

10. On or about December 12, 1983, Aston communicated a settlement offer for $1,200,000.00 to Gallagher by telephone. (Defendant's Exhibit 5; Plaintiff's Exhibit 9). It is not clear, however, whether Plaintiff's counsel originally agreed to accept this offer, or whether such acceptance was subsequently repudiated when he learned that B.J. Hughes would not agree to reduce its lien on Plaintiff's recovery as much as he had hoped. (Testimony of Price; Aston). In any event, Gallagher telephoned Aston in February, 1984, and demanded an additional $80,000.00 from Continental Emsco to settle the case. After negotiation, Aston and Gallagher agreed to split the $80,000.00 difference, and tentatively reached a settlement agreement in the sum of $1,240,000.00.

11. Gallagher did not telephone Aston back to confirm Plaintiff's willingness to accept $1,240,000.00, after communicating with counsel for the Mary Carter defendants. Rather, Gallagher turned the matter over to Mr. Charles Price, an associate in Gallagher's firm. Testimony of Price; Aston; Deposition Testimony of Gallagher.

12. At this point, the positions of the parties are in direct conflict. Plaintiff's position is that Price and Aston, on or about February 29, 1984, renegotiated the same $40,000.00 increase previously negotiated by Gallagher. (Testimony of Price; Plaintiff's Exhibits 12, 13, 14, 15). Immediately thereafter, Price contacted counsel for the Mary Carter defendants, informed them that Continental Emsco had offered the settlement amount of $1,240,000.00, and confirmed Plaintiff's agreement with third-party defendants, Forex and B.J. Hughes to settle for the sums of $210,-000.00 and $280,000.00 respectively. (Testimony of Price; McClanahan; Urquhart). Plaintiff, therefore, alleges that Price accepted Aston's offer of $1,240,000.00 on March 1, 1984. Aston's position is that

although he believed that the case should be settled for $1,240,000.00 in cash, and agreed to recommend that his client settle for said amount, (Testimony of Aston; Defendant's Exhibits 5, 6), a binding oral settlement agreement never resulted because he had neither express authority, nor did he communicate implied authority to settle for such amount. Testimony of Aston.

13. While Aston's recommendation to settle for $1,240,000.00 was pending, Continental Emsco's insurer, AFIA, changed management. On March 14, 1984, Aston was instructed by AFIA to withdraw the offer of settlement. Testimony of Aston; Moran; Defendant's Exhibits 3, 4, 5.

14. On March 21, 1984, Aston wrote to Gallagher, stating: "I have been instructed by Continental Emsco Company's insurer to withdraw the offer of settlement in the above cause." (Plaintiff's Exhibit 17). Although this Court is unable to determine precisely which offer was "withdrawn," based on the evidence presented in this case, it is reasonable to assume that Defendant intended to withdraw all offers, in accordance with the instructions given by AFIA. (Defendant's Exhibits 3, 4). Gallagher replied on March 23, 1984 that "we have already accepted your offer." (Plaintiff's Exhibit 18). On the other hand, it is clear that Plaintiff's purported acceptance referred to the alleged settlement offer of $1,240,000.00. Testimony of Price; Deposition Testimony of Gallagher.

15. AFIA's position is that the allegations as to settlement of Plaintiff's Seventh Amended Original Complaint do not fall within the relevant policy coverage, and it has refused to defend Continental Emsco in the matter. Testimony of Aston; Moran; Defendant's Exhibit 8.

16. The Defendant's essentially uncontroverted testimony that Aston lacked actual authority to extend an offer of settlement in the amount of $1,240,000.00 is accorded appropriate weight. Testimony of Aston; Moran; Defendant's Exhibits 3, 4, 5, 6, 11.

*Conclusions of Law*

1. This Court has jurisdiction of this matter pursuant to Rule 9(h) of the Federal Rules of Civil Procedure, and 28 U.S.C. § 1332.

■ 2. The threshold question raised by the parties is whether federal or state law governs the validity and enforceability of the oral settlement agreement at issue in this case. A considerable body of case law clearly establishes that "Questions regarding the enforceability or validity of [settlement] agreements are determined by federal law—at least where the substantive rights and liabilities derive from federal law." *See Borne v. A. & P. Boat Rentals No. 4, Inc.*, 780 F.2d 1254, 1256 (5th Cir., 1986), *quoting, Mid-South Towing Co. v. Har-win, Inc.*, 733 F.2d 386, 389 (5th Cir.1984). *See also Fulgence v. J. Ray McDermott Co.*, 662 F.2d 1207 (5th Cir. 1981); *Strange v. Gulf & South American Steamship Co., Inc.*, 495 F.2d 1235 (5th Cir.1974); *Cia Anon Venezolana de Navegacion v. Harris*, 374 F.2d 33 (5th Cir. 1967). Since Plaintiff alleged causes of action arising under general maritime law, federal law governs the validity and enforceability of his settlement agreement with Continental Emsco.

■ 3. This Court has the inherent power to summarily enforce an oral settlement agreement reached in a maritime case pending before it. *See Mid-South Towing*, 733 F.2d at 389, *citing, Strange*, 495 F.2d at 1237. However, in accordance with *Cia Anon*, 374 F.2d at 36, and *Mid-South Towing*, this Court determined that it was required to conduct an evidentiary hearing to ascertain the validity and scope of the disputed settlement agreement.

■ 4. Defendant contends that the maritime cases cited herein must be distinguished because the existence of a settlement agreement in those cases was not in dispute. Although Defendant's position has merit, it does not lead to the conclusion that Texas law must be applied here. Defendant's reasoning would create a false conflict of law which would allow a challenging party to choose the applicable law simply by putting into issue the existence of an oral settlement agreement. Thus, the substantive and procedural laws of Texas, including Rule 11 of the Texas Rules of Civil Procedure,[1] are inapplicable to the case at bar. Moreover, Rule 1(H) of the Local Rules for the Southern District of Texas,[2] also relied upon by defendant, must yield to the general maritime law.

5. Turning then to federal maritime law, this Court's inquiry is narrowed to a single issue: Did Defendant's counsel have authority to bind his client to a settlement agreement in the sum of $1,240,000.00? Since this Court concludes that Plaintiff either did not ultimately accept, or effectively repudiated his acceptance of the $1,200,000.00 offer, which was actually authorized by Defendant, the issue of authority is the critical issue here. Although there is a vigorous dispute between the parties regarding implied authority, it is essentially uncontroverted that counsel did not have actual authorization to extend the alleged offer of $1,240,000.00.

■ 6. This case has an interesting twist, since it is not the "uninformed" and "overreached" seaman, the ward of the

---

1. The Texas Supreme Court has applied Rule 11 to vacate a judgment based on an alleged breach of an oral settlement agreement. *See, e.g., Kennedy v. Hyde*, 682 S.W.2d 525 (Tex.1984). Tex. R.Civ.P. 11 provides as follows:

   No agreement between attorneys or parties touching any suit pending will be enforced unless it be in writing, signed and filed with the papers as a part of the record, or unless it be made in open court and entered of record.

2. Rule 1(H) of the Local Rules provides as follows:

   H. *Agreement Between Parties or Attorneys.* No agreement or consent among the parties or their attorneys with respect to any proceeding in this Court shall be enforceable by the Court unless made in open court, or reduced to writing and signed by the parties or their attorneys in charge, and approved by the Court.

admiralty court, who challenges the enforceability of the oral settlement agreement. Rather, it is the corporate defendant which challenges both the existence of a contract, and the scope of counsel's authority. Thus, Plaintiff must prove by a preponderance of the evidence that an oral agreement was reached regarding all material terms of the contract. *See, e.g., Union Fish Co. v. Erikson,* 248 U.S. 308, 39 S.Ct. 112, 63 L.Ed. 261 (1919); *Orient Mid-East Lines v. Albert E. Bowen, Inc.,* 1972 A.M.C. 1509, 458 F.2d 572 (2d Cir.1972). On the other hand, Defendant has the burden of proving that counsel did not have actual authority to settle the case. *See, Mid-South Towing,* 733 F.2d at 392.

7. At the outset of our discussion regarding the authority of counsel, this Court observes that there is a split of opinion on the issue among the states. *Comp, e.g., Harrop v. Western Airlines, Inc.,* 550 F.2d 1143 (9th Cir.1977) (interpreting California law, which requires express authorization), *with, Internat'l Telemeter Corp. v. Teleprompter Corp.,* 592 F.2d 49 (2d Cir.1979) (interpreting New York law, which permits enforcement based upon implied authority). The majority position seems to require "express" authority, which is variously defined as "actual" or "special" authority.

8. Although there is a paucity of maritime cases in this circuit which define and clarify binding precedent, federal jurisprudence concerning the authority of an attorney to settle a case, and Texas jurisprudence appear to be compatible. *See, e.g., St. Amand v. Marriott Hotel, Inc.,* 430 F.Supp. 488 (E.D.La.1977), *aff'd,* 611 F.2d 881 (5th Cir.1981) (interpreting federal law); *United States v. State of Texas,* 523 F.Supp. 703 (E.D.Tex.1981) (interpreting Texas law).

9. The most cited and most recent Fifth Circuit maritime cases dealing with the validity of a settlement agreement concluded by counsel are *Cia Anon,* 374 F.2d at 33, and *Mid-South Towing,* 733 F.2d at 386. In *Mid-South Towing,* the Fifth Circuit

cited, with approval, Judge Rubin's apt summarization of federal jurisprudence concerning the requirement of authority. *See St. Amand,* 430 F.Supp. at 490. In *St. Amand,* Judge Rubin declared as follows:

> The law is settled that an attorney of record may not compromise, settle or consent to a final disposition of his client's case without express authority ... However, this general principle must be considered in connection with the rule that an attorney of record is presumed to have authority to compromise and settle litigation of his client, and a judgment entered upon an agreement by the attorney of record will be set aside only upon affirmative proof of the party seeking to vacate the judgment that the attorney had no right to consent to its entry.

*Id., quoting, Thomas v. Colorado Trust Deed Funds, Inc.,* 366 F.2d 136, 139 (10th Cir.1966). The court further concluded that the *Thomas* case "rests on Supreme Court precedent, which also requires that the motion to set aside a judgment be made in due time." *Id., quoting, United States v. Beebe,* 180 U.S. 343, 21 S.Ct. 371, 45 L.Ed. 563 (1901). Although the *St. Amand* opinion arises specifically within the context of a motion for new trial, this Court concludes that the legal principles regarding authority of counsel are equally applicable to the case at bar.

10. The issue in *Cia Anon,* as in this case, was the authority of counsel to settle. The court found that counsel had such authority because he had worked on the case for a long time, and had informed the other parties that he had authority to settle. The *Cia Anon* court stressed the other counsel's reliance on the attorney's representation of authority, and "justified upholding the judgment, particularly where the defendant was a corporation whose alleged internal policies on granting authority to settle were not made known to its own counsel." *St. Amand,* 430 F.Supp. at 491 (discussing *Cia Anon* ). In *Mid-South Towing,* the Fifth Circuit once again had

the opportunity to re-examine *Cia Anon,* and concluded: "Implicit in the *Cia Anon* holding is the idea that the defendant had clothed its claims manager with apparent authority to settle the case and had caused the opposing parties to rely on that appearance." 733 F.2d at 391. Thus, *Cia Anon* rested upon the equitable doctrine of estoppel rather than upon the sufficiency of implied authority.

■ 11. In *Mid-South Towing,* the Fifth Circuit reversed and remanded because the "District Court effectively made a factual finding that [counsel] actually had been given authority to settle, without holding an evidentiary hearing." 733 F.2d at 391. The Fifth Circuit determined that a fact question precluded summary judgment. Even though the admission by counsel that he believed he had authority to settle the case was considered "highly probative of whether he actually was given authority," it was not considered conclusive. *Id.* The court further stated as follows:

> However, the mere fact that officers of OKC (the corporate defendant) informed Sawyer (counsel) after agreement had been reached that the settlement was not authorized does not "affirmatively prove" that Sawyer had not been given authority at an earlier time by some authorized person in the OKC organization. If the District Court finds that in effect Sawyer was given authority by someone in OKC without having been informed that final approval could only be made by others, then *Cia Anon* is directly applicable, and enforcement of the settlement would be proper.

*Id.* In conclusion, the Fifth Circuit stated, "our remand is for the narrow purpose of providing OKC with an evidentiary hearing in which OKC will have the burden of proof ... on the factual question on whether Sawyer did not actually have authority to settle the case." *Id.* at 392. A plain reading of *Mid-South Towing* leads to the inescapable conclusion that a binding settle-

ment agreement may not be entered without express or actual authorization by counsel's client, since there was no factual dispute in that case regarding implied authority, and summary judgment would otherwise have been proper.

■ 12. No busy trial court wants to try a case which was apparently settled at one time. In addition to this Court's overburdened trial schedule, "public policy favors voluntary settlements which obviate the need for expensive and time-consuming litigation." *Bass v. Phoenix Seadrill/78, Ltd.* 749 F.2d 1154, 1164 (5th Cir.1985). This case can and should be settled. However, this Court cannot create a settlement agreement for the parties. Here, enforcement would, at best, rest upon implied authority, which is vigorously disputed by Defendant's counsel. Counsel did not believe that he had authority to settle for $1,240,000.00, and it is not claimed that anyone in Defendant's organization was cloaked with authority or actually authorized the alleged settlement agreement. Moreover, it cannot be said that Defendant has ratified the disputed agreement. In light of Plaintiff's amended complaint and testimony, this Court cannot conclude that there has been a "meeting of the minds" sufficient to result in a binding and enforceable oral settlement agreement, made with either actual or apparent authority.

Accordingly, Plaintiff's Motion to Enforce Settlement Agreement is hereby DENIED.

It is so ORDERED.