Raymond SMEDLEY, Plaintiff-Appellee,

v.

TEMPLE DRILLING COMPANY, Defendant-Appellant.

No. 85–3320.

Summary Calendar.

United States Court of Appeals, Fifth Circuit.

Feb. 21, 1986.

Ronald A. Johnson, New Orleans, La., for defendant-appellant.

Rebel G. Ryland, Columbia, La., for plaintiff-appellee.

Before CLARK, Chief Judge, WILLIAMS, and HIGGINBOTHAM, Circuit Judges.

## OPINION

CLARK, Chief Judge:

Defendant/appellant Temple Drilling Company appeals from a judgment in favor of plaintiffs/appellees Cynthia and Raymond Smedley, Jr. in the amount of $397,-300. The judgment enforced a settlement agreement reached between the attorney for the Smedleys and the attorney retained by Crawford & Company, Temple's insurance adjuster. The district court found that Crawford & Company had apparent authority to settle on behalf of Temple or, alternatively, that Temple's actions ratified any unauthorized conduct on Crawford's part. We affirm.

### I

The facts are largely undisputed. The Smedleys sued Temple under the Jones Act and general maritime law. Crawford employed an attorney to represent Temple and advised Temple of his employment. Between the time the trial was set and its commencement, counsel informed the district court that they had reached a settlement. Thereupon the court signed an order dismissing the action and allowing the parties 60 days to consummate the settlement.

Crawford & Company, a claims adjusting company, had a contractual arrangement with Temple covering the handling and adjustment of claims against Temple. Since 1981, whenever Temple was sued, Temple would send a copy of the complaint to Crawford. Crawford would investigate and process the claim. Crawford would also hire an attorney to represent Temple.

The attorney reported to Crawford and did not deal directly with Temple.

Temple had an insurance deductible or self-insured retention (SIR) of $75,000 and was insured by Ideal Mutual Insurance in excess of the $75,000 SIR up to an additional $925,000 per claimant. Crawford maintained and managed a trust account from which it paid funds used in settlements of claims against Temple. Crawford's contract with Temple provided that Crawford had authority to pay bills of less than $1,000 without Temple's express approval. However, in settling claims, Crawford would not seek Temple's approval of a settlement unless the settlement was for less than the SIR amount. When the settlement exceeded the SIR amount, Crawford would seek approval only from Ideal Mutual. Crawford then would make payments up to $75,000 from the trust account funded by Temple. Crawford would be reimbursed by Ideal Mutual for payments made beyond this amount. Pursuant to this course of dealing, Crawford had settled a number of claims for amounts exceeding $75,000 without specific approval from Temple.

Crawford followed the customary procedure in this case. It had paid maintenance and cure to Raymond Smedley out of the trust account funded by Temple. Crawford informed Temple's counsel that it had authority to settle the claim on the terms negotiated. Temple's counsel did not have any direct communication with Temple. Ideal Mutual and Haddon Fraser Associates, Ltd. (Ideal Mutual's reinsurer) each contacted counsel and authorized the settlement. The record does not show what part, if any, of these authorizations were made known to plaintiffs.

The terms of the settlement provided that the Smedleys would receive from Crawford a check for $262,668.00. Raymond Smedley would receive an annuity payment of $1,166.66 per month for the rest of his life, guaranteed payable to any designated beneficiary for 30 years. Plaintiffs were also to receive four lump sum payments at specified dates in the future.

Prior to the execution of the release by plaintiffs, Crawford advised Temple that it was issuing a draft to plaintiffs in the sum of $262,668.00 and to the Insurance Company which was funding the agreed annuity for $134,632.00. Temple was also advised of all other payments made and expenses incurred to date in connection with the litigation. A copy of this notice went to Ideal Mutual.

On January 7, 1985, after the court dismissed the suit pursuant to the settlement agreement, counsel for both parties and the Smedleys met to consummate the settlement. The plaintiffs executed the release and received a draft drawn on the trust account of Crawford for the sum of $262,668.00. Subsequently, however, Ideal Mutual went into rehabilitation and Crawford, fearing it would not be reimbursed, stopped payment on the settlement drafts to plaintiffs and notified the insurer to cancel the annuity.

Temple never objected to the settlement until payment on Crawford's check was stopped and the Smedleys moved in the district court to enforce the settlement agreement. Furthermore, Temple, through Crawford, discontinued maintenance and cure payments to Raymond Smedley as soon as the settlement was consummated and did not resume such payments until after the filing of the motion to enforce the settlement.

The district court found that Temple, by customarily allowing Crawford to settle claims in excess of Temple's SIR amount without specific approval from Temple, had clothed Crawford with apparent authority to approve the settlement of claims such as the one brought by the Smedleys. The court concluded that Temple was estopped to deny Crawford's authority and therefore was bound by the settlement. The court also found that Temple's action of discontinuing maintenance and cure payments had the effect of ratifying any conduct by Crawford that might be unauthorized. The court therefore entered judgment enforcing the settlement agreement against Temple in the amount of $397,300.

## II

Temple argues that it is not bound by the settlement agreement with the Smedleys because it never gave its attorney of record authority to settle the case. Temple relies on the rule that an attorney may not settle a case without his client's express authority. *See Mid-South Towing Co. v. Harwin, Inc.,* 733 F.2d 386, 390 (5th Cir.1984); *see also St. Amand v. Marriott Hotel, Inc.,* 430 F.Supp. 488, 490 (E.D.La.1977), *aff'd* 611 F.2d 881 (5th Cir.1981). In its view, this rule required that the attorney of record in this case get specific approval from Temple itself before the settlement agreement was binding on Temple.

Temple does not claim that the settlements reached in prior similar cases without its specific approval were not binding. Instead, it contends that in those cases its express approval was unnecessary because most of the money at risk belonged to its insurance company and it was that company, not Temple, which agreed to settlement. Temple claims that in this case, as in cases where the settlement amount was less than the SIR amount, its attorney could not settle without specific authority from Temple. Under Temple's argument the burden of Ideal Mutual's insolvency would rest on the Smedleys rather than on Temple. We reject this argument.

█ It is clear that Crawford had actual authority from Temple to settle claims such as the one involved in this case. Although Temple never contemplated paying any part of such settlement it thought would be covered by Ideal Mutual, Temple nevertheless fully authorized and expected its attorney of record, with Crawford's approval, to settle with the Smedleys. Temple did not expect to be asked for or give any further approval than it had already conferred on Crawford.

It is not quite as clear whether such authority was "express" within the meaning of *Mid-South* and *St. Amand.* Temple seems to interpret the term "express authority" as "specific authority." Under this interpretation an attorney would be required to get his client's specific approval before settling each case. No client would be able to give an attorney general authority to settle cases.

A close reading of *Mid-South* shows that this is an incorrect interpretation of the term "express authority," as used in this circuit. The *Mid-South* court stated that if a client gave its attorney a general authority to settle cases assigned to him, without making him aware of specific limits on this authority, it would be estopped to deny this authority where the attorney exceeded what the client regarded as the limits. *Mid-South, supra,* 733 F.2d at 391. Therefore, it is permissible for a client to give its lawyer general authority to settle cases, and it is reasonable for the lawyer and the opposing litigant to rely on the lawyer's use of such authority.

There was nothing ambiguous about Crawford's authority to settle this case. It was not simply implied from Temple's conduct. The district court noted, and apparently accepted, the testimony of Crawford's insurance adjuster that Temple provided explicit instructions which allowed Crawford to settle this type of case without asking for Temple's approval. Thus, Temple is bound by the settlement advanced by its attorney and accepted by the plaintiff.

It is unnecessary to decide today the exact meaning of "express authority" in this context. Generally the term refers to authority which is explicitly granted, either orally or in writing, as opposed to authority which is inferred from conduct. *See* BLACK'S LAW DICTIONARY 169 (rev. 4th ed. 1968). The rule of requiring express authority in the settlement context derives from *United States v. Beebe,* 180 U.S. 343, 351–52, 21 S.Ct. 371, 374–75, 45 L.Ed. 563, 569 (1901). *Beebe,* however, only stands for the proposition that an attorney has no authority, implied from the mere fact of representation, to settle a client's case. Whether the rule of express authority requires an explicit oral or written grant of settlement authority, rather than a general consent by the client, either by conduct or words, for its representative to enter into settlements, Temple's grant of

authority to Crawford would satisfy either test.

## III

■ Another basis exists upon which to affirm the district court's judgment. This action was brought against Temple alone. The attorney procured by Crawford, as expressly authorized by Temple, acted for it as the sole defendant. Ideal Mutual's policy of insurance only obligated it to pay "on behalf of [Temple] sums which [Temple] shall become legally obligated to pay as damages because of bodily injury." The single release document named only Temple, though its "insurers" were included. The claim, the defense, and the settlement were unitary acts. Temple's position would bifurcate these elements by treating its SIR arrangement with its insurer as creating two claims, two defendants, and two settlements.

Temple is bound by the settlement negotiated by its lawyer because it clothed Crawford with apparent authority to authorize him to settle. In *Mid-South*, as noted above, the court stated that giving an attorney general authority to settle without notifying him of specific limits on that authority would clothe the attorney with apparent authority to make settlements even though the client thought they were in violation of undisclosed limits. Thus, even if Crawford was not specifically authorized to settle this case, as Temple now claims, because most of the money at risk was Temple's rather than Ideal Mutual's, Temple is estopped from denying Crawford's authority due to its failure to inform Crawford of this limit on Crawford's authority.

Additional support for this conclusion is provided by *Cia Anon Venezolana de Navegacion v. Harris*, 374 F.2d 33 (5th Cir. 1967). In that case the claims manager for defendant corporation purported to give settlement authority to defense counsel without obtaining permission of higher corporate officials as required by defendant's internal policies. In holding that defendant was bound by the settlement, we emphasized that the claims manager and the at-

torney had handled the litigation for two years and that neither was aware of the requirement of obtaining settlement authority from higher up in the organization. *Id.* at 35–36.

Like the higher corporate officials in *Cia Anon*, Temple did not actively handle the litigation and did not inform those handling the litigation of limits on their authority to settle. Like the attorney and claims manager in *Cia Anon*, Temple's attorney and Crawford reasonably believed that they had authority to settle the case. As the district court pointed out, the only difference between the case at bar and *Cia Anon* is that here Temple used Crawford, rather than an internal claims manager, to handle its litigation. This difference should not control since Temple's actions, like the defendant's conduct in *Cia Anon*, made it appear that Crawford had authority to settle and caused the plaintiffs to reasonably rely on this appearance.

## IV

■ Finally, the judgment appealed from is correct because even if Crawford had no authority, express or apparent, to settle this case, Temple's acquiescence in the termination of Raymond Smedley's maintenance and cure had the effect of ratifying the settlement. Temple knew of the settlement, well in advance of its consummation, accepted its benefits, and did not object until Crawford stopped payment on the check. A client's failure to object in a timely manner ratifies an unauthorized settlement. *United States v. Texas*, 523 F.Supp. 703, 711 (E.D.Tex.1981). Otherwise there would be nothing to preclude a party such as Temple from holding the opposing party to a settlement if circumstances turn out favorable (i.e., if Ideal Mutual had remained solvent) and escaping the settlement if circumstances turn out unfavorably (i.e., when Ideal Mutual became insolvent). Indeed, that is precisely what Temple seeks to do here. The doctrine of ratification, however, prevents Temple from accepting the benefits of a

settlement while leaving the risks to others.

**V**

For all of the reasons set forth above Temple is bound by the settlement in this case. The judgment of the district court is

**AFFIRMED.**