## Ryan J. GISCLAIR

v.

## TUG CHANTEL NAQUIN, INC., et al.

### Civ. A. Nos. 86–4435, 86–4504, 86–4932, 86–4936 and 87–4003.

United States District Court, E.D. Louisiana.

Aug. 5, 1988.

Joshua A. Tilton, Gregory N. Bilyeu, Baton Rouge, La., for plaintiff, Ryan J. Gisclair.

Randell E. Treadaway, Jim Swanson, New Orleans, La., for Tug Chantel Naquin, Inc. and Pacific Employers Ins. Co.

Ernest Souhlas, Metairie, La., for Joshua A. Tilton and Gregory N. Bilyeu.

HEEBE, Chief Judge.

This cause came on for hearing on a previous day on the motion of defendants, Tug Chantel Naquin, Inc. and Pacific Employers Insurance Company, to enforce settlements.

The Court, having heard the evidence at the hearing on August 3, 1988 and having studied the legal memoranda submitted by the parties, is now fully advised in the premises and ready to rule. Accordingly,

IT IS THE ORDER OF THE COURT that the motion of defendants, Tug Chantel Naquin, Inc. and Pacific Employers Insurance Company, to enforce settlements be, and the same is hereby DENIED.

## REASONS

These consolidated actions involve damages sustained by the Tug Chantel Naquin and its insurer, Pacific Employers Insurance Company (Pacific Employers), as a result of the sinking of the CHANTEL NAQUIN on May 3, 1986, as well as psychological injuries allegedly sustained by the crew of the vessel, Ryan Gisclair, Camille Callais, and Mark Callais. The Tug Chantel Naquin and Pacific Employers filed suit against Main Iron Works, Inc. (Main), alleging that the sinking of the vessel resulted from Main's negligence in performing structural modifications and repairs immediately prior to the fateful voyage. Then the crew filed suit against the Tug Chantel Naquin, Pacific Employers, and Main, claiming that they sustained psychological injuries due to the sinking.

In addition to the various claims which involve the sinking of the vessel, Ryan Gisclair and Camille Callais also seek damages from the Tug Chantel Naquin and Pacific Employers as a result of slip and fall injuries they allegedly sustained on September 26, 1986 (Gisclair) and October 25, 1986 (Camille Callais) which are unrelated to the prior sinking of the CHANTEL NAQUIN.

On November 18, 1987, at a status conference, Mr. Joshua Tilton, counsel for the plaintiffs, represented to the Court and all counsel that his clients had offered to settle their claims for psychological injuries for $35,000 each. When the Court inquired about the status of settlement negotiations concerning Camille Callais' and Ryan Gisclair's slip and fall claims, either Mr. Tilton or Mr. Gregory Bilyeu, co-counsel for the plaintiffs, advised that his clients had not made offers on those claims, but he would contact them regarding offers.

At a status conference on January 29, 1988, Mr. Tilton repeated his offers for the psychological injuries of $35,000 each. He also advised the Court and all counsel that he would be sending the defendants settlement offers on the unrelated slip and fall claims.

On March 9, 1988 Mr. Randell E. Treadaway, counsel for the defendants, Tug Chantel Naquin and Pacific Employers, received correspondence from Mr. Tilton advising that he would recommend to Camille Callais that he accept $75,000 for his slip and fall claim. Since Mr. Gisclair's medical condition had not stabilized, Mr. Tilton was not in a position to recommend a settlement offer for Mr. Gisclair at that time.

On May 20, 1988 Mr. Treadaway made a counter offer during a telephone conference with Mr. Bilyeu in connection with the crew's psychological injury claims. Defendants offered Mark Callais $5,000 in full settlement of his claim, and offered Camille Callais and Ryan Gisclair $8,000 each in settlement of their psychological injury claims. Additionally, defendants offered Camille Callais $14,500 for his unrelated slip and fall claim.

On Monday, May 23, 1988, Mr. Bilyeu telephoned Mr. Treadaway and advised that Mark Callais had accepted the $5,000 counter offer. He also advised that Camille Callais wanted $30,000 for both of his claims, but counsel had convinced him to take $26,000. Finally, Mr. Bilyeu advised him that Ryan Gisclair would accept $12,000 to settle his psychological claim.

The following day, May 24, 1988, Mr. Treadaway telephoned Mr. Bilyeu and advised him that the defendants accepted Camille Callais' counter offer of $26,000 to settle both of his claims. In addition, the defendants accepted Ryan Gisclair's counter offer of $12,000 to settle his psychological injury claim. Following the telephone conversation, Mr. Treadaway sent a letter to plaintiffs' counsel confirming the terms of the settlement.

On the evening of May 25, 1988 Mr. Bilyeu telephoned Mr. Treadaway and advised him that his clients were not satisfied with the settlements and, for the first time, advised that he had not spoken with his clients regarding the settlement offers he had made and accepted. He also stated that he may not have had authority to bind the settlements on May 24, 1988.

Mr. Bilyeu admits that he entered into an agreement with Mr. Treadaway as reflected in the May 24, 1988 letter. How-

ever, he now contends that because of a misunderstanding between himself and Mr. Tilton, the plaintiffs were never informed of *any* settlement offers and so there have been no binding settlements in this matter.

Ryan Gisclair, Mark Callais, and Camille Callais testified unequivocally that no settlement figures were ever discussed with them by either Mr. Tilton or Mr. Bilyeu prior to Wednesday, May 25, 1988. Furthermore, they represented to the Court that they had never given either Mr. Tilton or Mr. Bilyeu authority to settle for any amount. They refused the settlement figures agreed to by Mr. Bilyeu and Mr. Treadaway on May 25, 1988.

Defendants argue that binding settlements have been made on the psychological claims sustained by the crew, as well as Camille Callais' unrelated slip and fall claim. Defendants maintain that Mr. Bilyeu indicated that he had full authority to bind the settlements and, most importantly, he made the counter offers for the settlement of Ryan Gisclair's psychological claim and Camille Callais' claims which the defendants accepted.

■■■■ Because plaintiffs' alleged causes of action arise under the Jones Act and the general maritime law, federal law governs the validity and enforceability of the settlement agreements. *Mid South Towing Co. v. Har–Win, Inc.,* 733 F.2d 386, 389 (5th Cir.1984); *Thompson v. Continental Emsco Company,* 629 F.Supp. 1160, 1163 (S.D. Tex.1986). Because Ryan Gisclair, Camille Callais, and Mark Callais alleged causes of action under general maritime law and the Jones Act, federal law governs the enforceability of the settlement agreement with the Tug Chantel Naquin and Pacific Employers.

In the present case Ryan Gisclair, Camille Callais, and Mark Callais are seamen and so "are wards of admiralty whose rights federal courts are duty-bound to jealously protect." *Borne v. A & P Boat Rentals No. 4, Inc.,* 780 F.2d 1254, 1256 (5th Cir.1986), *quoting Bass v. Phoenix Seadrill/78, Ltd.,* 749 F.2d 1154, 1160–61 (5th Cir.1985).

A district court has the power to enforce summarily a settlement agreement reached in a case pending before it. *Mid–South Towing Co. v. Har–Win, Inc.,* 733 F.2d at 389; *Strange v. Gulf and South American Steamship Company,* 495 F.2d 1235, 1237 (5th Cir.1974). However, the Court is required to conduct an evidentiary hearing to ascertain the validity and scope of the settlement agreements which the plaintiffs dispute. *Cia Anon Venezolana de Navegacion v. Harris,* 374 F.2d 33, 36 (5th Cir. 1967). This Court conducted such a hearing on August 3, 1988.

The requirement of authority to settle was explained in *St. Amand v. Marriott Hotel, Inc.,* 430 F.Supp. 488, 490 (E.D.La. 1977), *aff'd* 611 F.2d 881 (5th Cir.1981). Judge Rubin, then District Judge, declared:

> The law is settled that an attorney of record may not compromise, settle or consent to a final disposition of his client's case without express authority.... However, this general principle must be considered in connection with the rule that an attorney of record is presumed to have authority to compromise and settle litigation of his client, and a judgment entered upon an agreement by the attorney of record will be set aside only upon affirmative proof of the party seeking to vacate the judgment that the attorney had no right to consent to its entry.

*Id.* The Fifth Circuit cited this language with approval in *Mid–South Towing Co. v. Har–Win, Inc.,* 733 F.2d at 390.

The Fifth Circuit has defined express authority as "authority which is explicitly granted, either orally or in writing, as opposed to authority which is inferred from conduct." *Smedley v. Temple Drilling Co.,* 782 F.2d 1357, 1360 (5th Cir.1986); BLACKS LAW DICTIONARY 169 (rev. 4th ed. 1968).

"The rule of requiring express authority in the settlement context derives from *United States v. Beebe,* 180 U.S. 343, 351– 52, 21 S.Ct. 371, 374–75, 45 L.Ed. 563, 569 (1901). *Beebe,* however, only stands for the proposition that an attorney has no authority, implied from the mere fact of

representation, to settle a client's case." *Smedley v. Temple Drilling Co.,* 782 F.2d at 1360. The *Smedley* court left open the question of "[w]hether the rule of express authority requires an explicit oral or written grant of settlement authority, rather than a general consent by the client, either by conduct or words, for its representative to enter into settlements...." *Id.*

The Court finds that Mr. Bilyeu did not have express or apparent authority from his clients to settle their cases. In fact, plaintiffs had *no* knowledge of any settlement discussions by the attorneys until *after* the settlements were reached between Mr. Bilyeu and Mr. Treadaway. Even though the Court is sympathetic to the plight of the defendants and finds Mr. Bilyeu's conduct less than satisfactory, this Court finds that the settlements are not binding and cannot be enforced.

Accordingly,

IT IS THE ORDER OF THE COURT that the motion of defendants, Tug Chantel Naquin, Inc. and Pacific Employers Insurance Company, to enforce settlements be, and the same is hereby DENIED.